UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT,<br><br>    Plaintiff,<br><br>and<br><br>HELLS CANYON PRESERVATION COUNCIL and THE WILDERNESS SOCIETY,<br><br>    Co-Plaintiffs,<br><br>    v.<br><br>UNITED STATES FOREST SERVICE,<br><br>    Defendant. | Case No. 1:12-cv-00286-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion for preliminary injunction filed by plaintiff Western Watersheds Project. The Court heard oral argument on June 13, 2012 and granted the motion from the bench. This decision will set forth the Court's analysis in more detail.

MEMORANDUM DECISION AND ORDER - 1

## BACKGROUND

A recently-passed appropriations rider has revived old concerns over the grazing of domestic sheep in the Payette National Forest. Plaintiff originally brought suit in 2007 to prevent grazing in the area, eventually culminating in an Amended ROD for the Payette Forest Plan. The ROD described a phased reduction in grazing from 2011 to 2013. However, Representative Mike Simpson sponsored a budget rider in 2012 that prohibited the Forest Service from spending appropriated funds on "any *new* management restrictions" on domestic sheep on National Forest land "in excess of the management restrictions that *existed on July 1, 2011*." Pub. L. No. 112-74, Div. E § 431 (emphasis added). Problems arose when the Forest Service interpreted the rider as applying to the Amended ROD to Payette Forest Plan. The agency believed the rider compelled it to authorize grazing on several allotments that were supposed to be closed in 2012 under the ROD, thus undoing what the prior litigation had achieved.

Alleging that the grazing authorization was inconsistent with the Payette Forest Plan in violation of NFMA, Plaintiff seeks to enjoin grazing on the Grassy Mountain, Hershey Lava, and Vance Creek allotments prior to July 10th, 2012. Defendant initially contended that the Forest Service's grazing authorization was not a final agency action because AOIs for the 2012 grazing season had not yet been issued. *Def.'s Resp*. at 5-7, Dkt. 9. However, AOIs were issued on June 7th. Therefore, the initial concerns over justiciability are moot.

## ANALYSIS

**1.     The Forest Service is not entitled to *Chevron* deference.**

The Forest Service's interpretation is not entitled to *Chevron* deference for a number of reasons. First, and most importantly, *Chevron* deference only applies where the language of a statute is ambiguous. Here, the language of the appropriations rider is clear. The rider prohibits the Forest Service from creating additional grazing restrictions beyond those that existed on July 1, 2011. The phased reduction of grazing described in the ROD, including the closures of the three allotments in this case, existed more than a year before that date. Indeed, it is precisely because the grazing restrictions here were in existence on July1, 2011 that the appropriations rider was passed.

Moreover, *Chevron* deference does not apply to cases where an agency interprets a statute that it does not administer and therefore falls outside its scope of expertise. *See Ass'n of Civilian Technicians v. Federal Labor Relations Auth.*, 200 F.3d 590, 592 (9th Cir. 2000). The Forest Service administers its organic statute, NFMA, not budget bills. Its expertise is confined to matters of federal land management. Reconciling the appropriations rider with NFMA's substantive obligations is therefore a purely legal question warranting a less deferential standard.

Accordingly, the Forest Service's interpretation of the rider is not entitled to *Chevron* deference. Instead, as a purely legal question, it should simply be analyzed for its reasonableness.

## 2. The Forest Service's interpretation of the 2012 rider was not reasonable.

Under this less deferential standard, it is clear that the Forest Service's interpretation of the appropriations rider was unreasonable. First, the agency interpretation is contrary to the plain language of the rider. As mentioned above, the rider unambiguously does not apply to management restrictions that existed on July 1, 2011. Defendant, however, attempts to distort this meaning by equating "existed" with "implemented." *Def's Resp.* at 4, Dkt. 9   Such a connotation is baseless, however. The phrase "existed on" means simply that. Therefore, the planned closures of the three allotments in question existed on July 1, 2011 because they were already contained in the 2010 ROD.

Second, the Forest Service's interpretation of the rider is contrary to the intent of Congress. What little legislative history exists makes no specific reference to the Payette National Forest, but only to federal lands in general. *See* Conf. Rep. on H.R. 2055, 157 Cong. Rec. 193, at H9602, 112th Cong. 1st Sess. (Dec. 15, 2011) (stating that Section 431 "addresses the management of domestic sheep and bighorn sheep on Federal lands"). Defendant relies solely on an isolated remark in a letter from Rep. Simpson about "freezing current management." *Def's Resp.* at 9, Dkt. 9. Divorced from context, this might support the Defendant's theory that the rider was intended to "ameliorate the effects of the 2010 ROD" by undoing its scheme of reduced grazing. *Id.* at 10. In reality, however, the full context of the letter shows that Rep. Simpson intended the legislation to be a stop-gap measure that would prevent grazing reductions on *other* National Forest

land. *See* AR 1740 (stating that the rider's language "simply prevents the grazing plan on the Payette to be implemented elsewhere for one year."). Simply cherry-picking phrases like this is less than persuasive, especially when done to achieve their opposite meaning. Thus, the record demonstrates that Congress intended to leave in place the planned reduction in grazing in the Payette National Forest.

### 3.     The equities of the case favor the Plaintiff.

In its original motion for injunctive relief, Plaintiff extensively detailed the likelihood of irreparable harm to bighorn sheep populations in the allotments in question. *Pl's Br*. at 19-27, Dkt 3-1. Plaintiff also outlined how the balance of hardships and the public interest favor an injunction. *Id*. at 27-29. Defendant has put forth no claims against these arguments. The Court is therefore satisfied that the remaining elements necessary for the issuance of an injunction have been met. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

### ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Plaintiff's motion for preliminary injunction (Dkt. 3) is GRANTED.

IT IS FURTHER ORDERED, that counsel shall submit a proposed preliminary injunction to the Court for issuance.

**MEMORANDUM DECISION AND ORDER - 5**

Date: **Jun 15, 2012**

B. LYNN WINMILL
Chief District Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 6**